UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BESMA SAMI, an individual,
LJUBA PAVLOV, an individual,
And all others similarly situated,

    Plaintiffs,                                              Case No.
                                                        Hon.

vs.

JEFF SESSIONS, ATTORNEY GENERAL,
JOHN F. KELLY, SECRETARY OF U.S. DEPARTMENT OF
HOMELAND SECURITY ("DHS"), RONALD VITELLO,
COMMISSIONER OF U.S. CUSTOMS AND
BORDER PROTECTION ("CBP"), REBECCA ADDUCCI,
DIRECTOR OF THE DETROIT DISTRICT OF IMMIGRATION
AND CUSTOMS ENFORCEMENT,

    Defendants.
_____/

NORMAN YATOOMA & ASSOCIATES, P.C.
By: Norman Yatooma (P54746)
Attorneys for Plaintiff
1615 S. Telegraph Road
Bloomfield Hills, MI 48302
nyatooma@nomranyatooma.com

FLEMING YATOOMA & BOROWICZ PLC
By: Gavin J. Fleming (P68366)
Attorneys for Plaintiff
1615 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
fleming@fyblaw.com
_____/

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1

## **INTRODUCTORY STATEMENT**

1. Plaintiffs, BESMA SAMI and LJUBA PAVLOV are United States Citizens who have suffered violations of their Constitutional Rights as a result of Defendants' conduct.

2. Each Plaintiff is married to a Chaldean, Iraqi, Christian national who is either to be deported or will be deported to Iraq where he will face certain persecution, including torture and death.

3. BESMA SAMI's spouse, Mohanad Sami entered the United States legally when he was a young boy.

4. LJUBA PAVLOV's spouse, Wisam Yacoub similarly entered the United States legally when he was a baby.

6. Mr. Sami and other Chaldean, Iraqi, Christian nationals were detained on June 11, 2017 and are presently scheduled for immediate deportation to Iraq. Mr. Yacoub, and others similarly situated, are in danger of being detained imminently.

7. The basis asserted by Defendants for deporting Plaintiffs' spouses is that they committed crimes that make them eligible for removal; however, in each case, the crimes at issue were committed years ago.

8. In fact, Plaintiffs, their spouses, and their children have lived peacefully in this Country until they were detained (or threatened to be detained) en masse on June 11, 2017.

NORMAN YATOOMA & ASSOCIATES, P.C.

9. The Orders of Supervision or Probation governing Mr. Sami's and Mr. Yacoub's residence in the United States generally require, among other things, that they check in with Defendants once per year, but otherwise serve as the functional equivalent of a visa or other approved form of residency.

10. In reliance on Defendants decision not to remove their spouses, Plaintiffs married their husbands and had children together in this country where they reside.

11. Defendants' actions will destroy these families, widowing spouses and orphaning children in violation of Plaintiffs' Constitutional rights.

## **DEFENDANTS INTERFERENCE WITH PLAINTIFFS' CONSTITUTIONAL RIGHTS**

12. Many aspects of marital relationships receive specific protection under the United States Constitution.

13. In broad terms, the United States Supreme Court describes marriage as "the foundation of the family and of society, without which there would be neither civilization nor progress." *See Maynard v. Hill*, 125 U.S. 190, 205 (1888).

14. More recently, Courts in the Third Circuit have described this Constitutional right as follows: "Spouses possess a liberty interest under the Due Process Clause, which entitles them to pursue happy, intimate association, free from unlawful government interference." *See Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 384 (E.D. Pa. 2002).

3

15. Put another way, "there is a recognized liberty interest in a person's companionship with a family member, such that the state's interference with it may constitute a violation of that person's substantive or procedural due process rights." *See Smith v. City of Fontana*, 818 F.2d 1411, 1419-20 (9th Cir. 1987) (overruled on other grounds by *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999))

16. It is well settled that "[t]he Constitution [also] protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977).

17. Because these liberty interests spring from natural law traditions, the Supreme Court recognizes them as "intrinsic human rights." *See Smith v. Organization of Foster Families*, 431 U.S. 816, 845 (1977).

18. Plaintiffs therefore have specific Constitutional rights to consortium with their spouses and the protection of their family from the unlawful interference of Defendants.

19. Defendants' actions are unlawful and their timing is catastrophic. The Orders of Removal for Plaintiffs' spouses were issued at a time when the persecution of Christians in Iraq was not well established. To enforce such orders now, however, so many years later, and deport these Christian men to the war-torn country of Iraq, is effectively to deport them to their deaths.

20. Prior to sending Mr. Yacoub and Mr. Sami to certain persecution, their

4

removal cases should be re-opened and re-examined.

21. Mr. Yacoub and Mr. Sami should also be afforded the right to see their families and an opportunity to retain counsel, rights which are not being afforded to them at this time. Indeed, detainees cannot be contacted by either their spouses or their counsel.

22. Plaintiffs therefore file this case on behalf of all similarly situated individuals nationwide—i.e., Chaldean United States Citizens who are the spouses or children of any Iraqi national scheduled for deportation as a result of DHS' and CBP's implementation of the January 27, 2017 Executive Order entitled: "Executive Order Protecting the Nation From Foreign Terrorist Entry Into The United States."

## PARTIES, JURISDICTION, AND VENUE

23. Plaintiffs are United States Citizens and residents of the Eastern District of Michigan.

24. The class members are residents of the Eastern District of Michigan, but also reside across the United States.

25. This Court has jurisdiction over this case under 28 U.S.C. § 1343 and under 28. U.S.C. § 1331 because a federal question exists and this claim is properly brought under *Bivens v. Six Unknown Agents,* 403 U.S. 388 (1971).

26. Venue is proper in this Court because the Eastern District is where the ICE Field Office Director is located. *See Roman v. Ashcroft*, 340 F.3d 314, 319-21 (6th Cir. 2003).

5

## FACTUAL BACKGROUND

### A. The June 11, 2017 Raid.

27. On June 11, 2017, ICE agents abruptly and forcibly took Mohanad Sami away from his spouse and family under the pretext that ICE was making efforts to "process a backlog."

28. Mr. Yacoub and Plaintiff, Pavlov, live in daily fear of Mr. Yacoub being detained. Indeed, they reasonably believe that ICE will be taking Mr. Yacoub imminently.

29. As this Court knows, the intensified efforts on the part of ICE are due to the immigration policies that are found in the President's January 27, 2017 and March 6, 2017 Executive Orders. *See* Executive Orders, Ex. A.

30. Mr. Sami and Mr. Yacoub are far from terrorists, but rather, are Christians who will almost certainly be killed if deported to Iraq.

### B. Sami Is Detained And Has Been Denied Access To His Family And Legal Counsel.

31. After being forcibly detained by ICE, Defendants took Sami, upon information and belief, to a Federal prison located in Ohio where he is being held without the right to counsel.

32. Plaintiff Sami has attempted to contact her husband but has been unable to do so.

6

33. In fact, if Mr. Sami is deported as scheduled, Besma Sami will never be able to see her husband again.

### C. Background On The Sami Family.

39. In 2002, Plaintiff Besma Sami, a naturalized U.S. Citizen, married Mohanad Sami, who came to the United States in 1997.

43. Besma and Mohanad have three male children, one born in 2003 and the others born in 2010.

44. In 2002, Mohanad was charged with passing counterfeit checks and was convicted for this crime in 2007. A final order of deportation was issued at or around this time. Since his conviction, Mohanad has not been convicted of any other crimes.

45. In fact, Mohanad has lived in this District peacefully with his Plaintiff wife until he was detained on June 11, 2017.

46. Mohanad has paid taxes for as long as his wife can remember and has lived in the United States for almost twenty years.

### D. Background On The Yacoub Family.

47. Ljuba is a United States Citizen who married her husband, Wisam, in 2008. Wisam entered the United States as a baby after his family fled Iraq due to religious persecution.

48. Ljuba and Wisam have two male children, born in 2008 and 2009.

7

49. Wisam has a criminal record dating back several years. One case involved an alleged burglary in 1997 that Wisam resolved for a $300.00 restitution and another attempted in 1999. Finally, Wisam pled guilty to possession of marijuana in 2001 and a final order of deportation was issued at or around this time.

50. Since 2001, Wisam has has lived in this District peacefully with his Plaintiff wife, but fears that he will be imminently detained after the undocumented en masse detention that took place on June 11, 2017.

51. Wisam has paid taxes for as long as his wife can remember and has lived in the United States since 1981.

### E. If Plaintiffs' Spouses Are Removed To Iraq, They Will Be Persecuted.

52. Mr. Sami now stands to be deported imminently and faces persecution in Iraq, which would almost certainly include death.

53. There is a longstanding history of persecution of Christians in Iraq.

54. Indeed, the organization Open Doors states that Iraq's Christian population is now approximately 230,000 from almost 5,000,000. *See* Open Doors Survey, Ex. B.

55. The persecution of Iraqi Christians is well documented. Indeed, in March 2016, former Secretary of State, John Kerry, publicly denounced the actions

of ISIS with regard to the persecution of Iraqi Christians. *See* Kerry News Story, Ex. C.

56. The 6th Circuit Court of Appeals has confirmed the threat of persecution, holding, on the basis of country-conditions, that "*status as a Christian alone entitles [a non- immigrant alien] to withholding of removal, given that there is 'a clear probability' that he would be subject to future persecution if returned to contemporary Iraq.*" *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015)

57. Conditions in Iraq have only declined over the past two years. In fact, Al-Mousawi, who is in charge of the Iraqi government body which maintains all of Iraq's Shia holy sites, sparked anger when he referred to Christians as "infidels" and from his pulpit decreed "[e]ither they convert to Islam or else they are killed…." *See* Al-Mousawi Story, Ex. D.

58. The inchoate "agreement" between the United States and Iraq regarding the removal of Plaintiffs' spouses and the balance of those detained on June 11, 2017, is not in writing and is not reliable.

59. In sum, sending Sami, Yacoub, or Sami's fellow detainees to Iraq will result in persecution and death.

## CLASS ALLEGATIONS

60. Plaintiffs incorporate the foregoing paragraphs by reference as if fully set forth herein.

9

61. Plaintiffs bring this class action on behalf of themselves and all others similarly situated for the purpose of asserting claims alleged in this Complaint on a common basis.

62. The proposed class is defined under Rules 23(b)(2) and 23(b)3 as: all spouses of Christian Iraqi nationals within the jurisdiction of the Detroit ICE Field Office and the DHS nationally, with final orders of removal, who have been, or will be, arrested, detained, and deported by the U.S. Government.

63. There are more than 100 members of the proposed class. The total number of class members is such that joinder of the claims of all class members would be impracticable.

64. Plaintiffs' claims are typical of the claims of the proposed class, and Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs have no relevant conflicts of interest with other members of the proposed class and have retained competent counsel experienced in class action and constitutional law.

65. There are multiple questions of law and fact common to the members of the proposed class. These common questions include, but are not limited to, the following: Whether the Constitutional rights of Plaintiffs will be violated by permitting the removal of those who have been or will be detained, without first providing them an opportunity to demonstrate their qualifications for relief from persecution or torture based on their religion, changed country conditions in Iraq,

and other factors; whether Defendants have violated Plaintiffs' Substantive and/or Procedural Due Process Rights with such detention and threatened or actual deportation; and whether, if deportation occurs, Defendants are therefore responsible for compensating all class members for loss of consortium.

## COUNT I—VIOLATION OF PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION

66. Plaintiffs incorporate the foregoing paragraphs by reference as if fully set forth herein.

67. The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."

68. As set forth above, the imminent deportation of their spouses deprives Plaintiffs, United States Citizens, of their liberty interest under the Due Process Clause, which entitles them to pursue happy, intimate association, free from unlawful government interference.

69. Defendants have deprived Plaintiffs of these Constitutionally protected rights without due process of law in violation of the United States Constitution.

70. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs and their children have been and will continue to be deprived of the care, companionship, society, and guidance of their spouses/fathers and have suffered and will continue to suffer injury to their familial relationships.

11

71. Based upon Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief and, if necessary, compensation for loss of consortium.

## COUNT II—VIOLATION OF PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION

72. Plaintiffs incorporate the foregoing paragraphs by reference as if fully set forth herein.

73. The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."

74. As set forth above, the imminent deportation of Plaintiffs' spouses deprives Plaintiffs of their liberty interest under the Due Process Clause, which entitles them to pursue happy, intimate association, free from unlawful government interference.

75. Defendants conduct shocks the conscience and therefore Defendants have deprived Plaintiffs of their Constitutionally protected rights in violation of the substantive due process clause of the Fifth Amendment of the United States Constitution.

76. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs and their children have been and will continue to be deprived of the care,

companionship, society, and guidance of their spouses/fathers and have suffered and will continue to suffer injury to their familial relationships..

77. Based upon Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief and, if necessary, compensation for loss of consortium.

### COUNT III—DECLARATORY JUDGMENT ADJUDICATING THAT THE ACTIONS OF DEFENDANTS ARE UNCONSTITUTIONAL

78. Plaintiffs incorporate the foregoing paragraphs by reference as if fully set forth herein.

79. This case involves an actual controversy between Plaintiffs and the class members as a whole and Defendants.

80. This Court has independent jurisdiction over this case as set forth above.

81. Plaintiffs and class members seek a declaratory judgment from this Court finding the January 27, 2017 and March 6, 2017 Executive Orders unconstitutional in their application to Plaintiffs and all others detained or sought to be detained.

82. Plaintiffs and class members seek a declaratory judgment that they, as United States Citizens, have specific, inalienable Constitutional rights, including a liberty interest under the Due Process Clause, which entitles them to pursue happy, intimate association, free from unlawful government interference.

83. The law of the United States specifically prohibits the removal of any individual who will be subject to persecution. *See* 8 U.S.C. § 1231(b)(3).

84. As such, a declaratory judgment should be entered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A. Assume jurisdiction over this matter;

B. Stay the Plaintiffs' spouses and other class members' spouses removal to Iraq until this action is decided;

C. Enjoin the government from removing Sami or other class spouses, or detaining and removing Yacoub or other class spouses, without first providing them with an opportunity to establish that, in light of current conditions and the likelihood that they would suffer persecution or torture if removed to Iraq, they are entitled to protection against such removal;

D. Order the government to release Sami and other class spouses from detention, absent an individualized determination by an impartial adjudicator that detention is justified based on danger or flight risk, which cannot be sufficiently addressed by alternative conditions of release and/or supervision;

E. In the event that Sami, Yacoub or other class spouses are deported, compensate Plaintiffs and class members for loss of consortium and any other amount permitted under applicable law; and

F. Grant such other further relief as is just and equitable.

Dated: June 21, 2017                Respectfully submitted;

/s/ Norman A. Yatooma
**NORMAN YATOOMA & ASSOCIATES, P.C.**
Norman A. Yatooma (P54746)
Attorneys for Plaintiffs
1615 S. Telegraph Road
Bloomfield Hills, MI 48302
(248) 481-2000
nyatooma@normanyatooma.com

Dated: June 21, 2017                Respectfully submitted;

/s/ Gavin J. Fleming
**FLEMING YATOOMA & BOROWICZ, PLC**
Gavin J. Fleming (P68366)
Attorneys for Plaintiffs
1615 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 230-2820
fleming@fyblaw.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BESMA SAMI, an individual,
LJUBA PAVLOV, an individual,
And all others similarly situated,

    Plaintiffs,                                                                Case No.
                                                                           Hon.

vs.

JEFF SESSIONS, ATTORNEY GENERAL,
JOHN F. KELLY, SECRETARY OF U.S. DEPARTMENT OF
HOMELAND SECURITY ("DHS"), RONALD VITELLO,
COMMISSIONER OF U.S. CUSTOMS AND
BORDER PROTECTION ("CBP"), REBECCA ADDUCCI,
DIRECTOR OF THE DETROIT DISTRICT OF IMMIGRATION
AND CUSTOMS ENFORCEMENT,

    Defendants.
_____/
NORMAN YATOOMA & ASSOCIATES, P.C.
By: Norman Yatooma (P54746)
Attorneys for Plaintiff
1615 S. Telegraph Road
Bloomfield Hills, MI 48302
nyatooma@nomranyatooma.com

FLEMING YATOOMA & BOROWICZ PLC
By: Gavin J. Fleming (P68366)
Attorneys for Plaintiff
1615 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
fleming@fyblaw.com
_____/

NORMAN YATOOMA & ASSOCIATES, P.C.

## **JURY DEMAND**

Plaintiffs, Besma Sami, Ljuba Pavlov, and all others similarly situated, by and through their attorneys, NORMAN YATOOMA & ASSOCIATES, P.C. and FLEMING YATOOMA & BOROWICZ PLC, hereby demand Trial by Jury in this matter.

Dated:  June 21, 2017            Respectfully submitted;

/s/ Norman A. Yatooma
**NORMAN YATOOMA & ASSOCIATES, P.C.**
Norman A. Yatooma (P54746)
Attorneys for Plaintiffs
1615 S. Telegraph Road
Bloomfield Hills, MI 48302
(248) 481-2000
nyatooma@normanyatooma.com

Dated:  June 21, 2017            Respectfully submitted;

/s/ Gavin J. Fleming
**FLEMING YATOOMA & BOROWICZ, PLC**
Gavin J. Fleming (P68366)
Attorneys for Plaintiffs
1615 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 230-2820
fleming@fyblaw.com